UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
K.A., S.A., L.R., and JANE DOES 1-25,

                     Plaintiffs,

    -against-

CITY OF NEW YORK, CORIZON HEALTH, INC.,
CORIZON, INC., and SIDNEY WILSON, individually
and in his official capacity,

                     Defendants.

------------------------------------------------------------------X

Docket No.

**VERIFIED COMPLAINT**

Jury Trial Demanded

       Plaintiffs, by their attorneys, HELD & HINES, LLP, as and for their Verified Complaint, hereinafter states and alleges as follows upon information and belief:

## PRELIMINARY STATEMENT

    1.    Plaintiffs commence this action pursuant to 42 U.S.C. §1983 seeking compensatory damages against all defendants and punitive damages against Defendants Corizon and Sidney Wilson for violating their constitutional rights while acting under color of law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988.

    2.    Plaintiffs also assert supplemental state law claims against Corizon Health, Inc. and Corizon, Inc. (collectively "Corizon"), their agents, servants and employees, as well as Defendant Sidney Wilson for violations of their statutory rights and those secured by the Constitution of the State of New York, as well as common law claims of sexual assault and rape, negligence, negligent hiring, training, supervision and retention, intentional and negligent infliction of emotional distress, failure to protect, and prima facie tort.

    3.    At all times alleged herein, Plaintiffs were female prisoners confined to the custody and care of the City of New York at its Rose M. Singer Center on Rikers Island ("RMSC"), who were repeatedly subjected to cruel, inhumane and dehumanizing brutality by

Defendant Sidney Wilson, a Physician Assistant employed in the clinic at RMSC. As alleged herein, Plaintiffs were repeatedly raped, sexually assaulted and abused, and forced to undergo unnecessary internal pelvic examinations for the sexual gratification of Defendant Wilson.

4.     New York State has recognized the coercive power correction officers and clinic staff wield over incarcerated individuals, and the related risk of rape and other sexual abuse, by criminalizing all sexual activity between incarcerated individuals and correctional staff in New York Penal Law §130.05(3)(f), New York Penal Law §130.25(1), and New York Penal Law §130.40(1). The City and Corizon are aware that New York State has identified a significant risk of sexual coercion of individuals in custody, but it nonetheless permits a culture of systemic rape and other sexual abuse of prisoners to exist on Rikers Island, in general, and RMSC in particular.

5.     The pervasive culture of rape and other sexual abuse at RMSC is common knowledge within and without the facility. Correction officers[1] and staff, including clinical staff assigned thereto, know not only that prisoners are regularly abused, but also which individuals commit the abuses, which type of prisoners are most often abused, and when and where the abuse occurs.

6.     Supervisory officials, officers and clinic staff facilitated these rapes and other sexual abuses by making predictable rounds and otherwise failing to meaningfully oversee correction officers and staff assigned to DOC facilities and the clinic within each facility.

7.     The City of New York facilitated these rapes and other sexual abuses by failing to screen Corizon employees through background checks and other methods, by permitting its supervisory officials and staff to operate in the manner alleged herein, by failing to monitor (through cameras or otherwise) known at-risk areas, by failing to require its officers to report

---

[1] As used herein, the term "correction officer" is intended to refer to DOC staff in the general and not to any specific rank, title or position.

rape and sexual abuse suspected or witnessed, by failing to encourage victims to report rape and sexual abuse, and by failing to post signs throughout Rikers Island and RMSC stating it is a felony for clinic staff to have sexual intercourse or contact with an inmate.

8.     Corizon facilitated these rapes and other sexual abuses by failing to screen its employees through background checks and other methods, by permitting its supervisory officials and staff to operate in the manner alleged herein, by failing to monitor (through cameras or otherwise) known at-risk areas, by failing to require its clinic staff to report rape and sexual abuse suspected or witnessed, by failing to encourage victims to report rape and sexual abuse, and by failing to post signs throughout Rikers Island and RMSC stating it is a crime felony for clinic staff to have sexual intercourse or contact with an inmate.

9.     It is known to the City of New York and Corizon that their sexually abusive clinic staff, including Defendant Wilson, keep prisoners, including Plaintiffs, from reporting their abuse by threat and/or exchanging contraband, money and promises for their silence. Here, Defendant Wilson told each plaintiff that he loved her, that each plaintiff was special to him, and that he considered himself to be in a serious personal relationship with each plaintiff, unbeknownst to the others. Defendant Wilson also provided the plaintiffs with contraband and/or special favors in the form of Popeyes chicken, cigarettes, candy, gum, and headphones, and would even make payments to the plaintiffs through his family members.

10.     The City of New York, by its Department of Health and Mental Hygiene ("DOHMH") and Department of Correction ("DOC"), has grossly failed to perform criminal background and fingerprint checks on Corizon employees prior to their employment and thereafter, failed to supervise Corizon in its hiring practices, failed to perform phone checks and visitation history checks of prospective Corizon employees to prevent Corizon from hiring

individuals who have familial or personal relationships with incarcerated persons, failed to review Corizon staff files to ensure Corizon was properly supervising its employees and regularly reviewing employee performance, failed to require Corizon to perform annual employee performance evaluations, failed to establish criteria for denying Corizon employees access to DOC facilities, failed to establish training requirements for Corizon employees working in DOC facilities, failed to initiate procedures to monitor, discipline and prevent contracted employees from bringing contraband into DOC facilities, and permitted Corizon employees to have unrestricted and lengthy prisoner contact with little to no supervision.

11.     Corizon has grossly failed to perform and/or require DOC to perform criminal background and fingerprint checks on its prospective employees prior to their employment and thereafter, failed to ensure that hired employees were thoroughly interviewed, screened and vetted, failed to prevent the hiring of individuals who have familial or personal relationships with incarcerated persons, failed to supervise its employees and regularly review employee performance, failed to perform annual employee performance evaluations, failed to establish criteria for denying its employees access to DOC facilities, failed to establish training requirements for its employees working in DOC facilities, failed to initiate procedures to monitor, discipline and prevent its employees from bringing contraband into DOC facilities, and permitted its employees to have unrestricted and lengthy prisoner contact with little to no supervision.

12.     Despite being on notice of allegations of bribery, contraband smuggling, and inappropriate staff-prisoner[2] relationships by Corizon employees, the City of New York and Corizon continued to give clinical staff ample opportunity to engage in misconduct with

---

[2] As used herein, the term "prisoner" or "inmate," or the plural thereof, shall refer to both pre-trial and sentenced inmates.

prisoners, in deliberate indifference to the substantial risk of harm it posed to Plaintiffs and others in DOC custody. The customs, policies, practices, acts, and omissions of the City of New York and Corizon allowed Defendant Wilson to rape and sexually abuse the plaintiffs.

## JURISDICTION AND VENUE

13.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

14.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

15.     Plaintiffs' claim for attorneys fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorneys fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983, as well as New York C.P.L.R. Art. 86 for pendent claims arising under New York state and local law.

16.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Bronx County, New York, which is within this judicial district.

## PARTIES

17.     At all times mentioned herein, the plaintiffs were and remain residents of the State of New York.

18.     At all times mentioned herein, the plaintiffs were prisoners classified and assigned by DOC to be housed at RMSC.

19.     Plaintiffs Jane Does 1-25[3] are other anticipated victims of Defendant Wilson.

20.     Upon information and belief, and at all times mentioned herein, the defendant,

---

[3] Plaintiffs' counsel is presently aware of at least four (4) other victims of Defendant Wilson, but has not yet been retained by these individuals.

City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

21.     Upon information and belief, and at all times mentioned herein, the City maintains the New York City Department of Health and Mental Hygiene (hereinafter referred to as the "DOHMH"), pursuant to law.

22.     Upon information and belief, and at all times mentioned herein, the City maintains the City of New York Department of Correction (hereinafter referred to as the "DOC"), pursuant to law.

23.     Corizon Health, Inc. is a foreign corporation organized and existing by virtue of the laws of the State of Delaware, with its principal executive office in Tennessee. Corizon Health, Inc. is authorized to and does transact business in the State of New York.

24.     Corizon, Inc. is a foreign corporation organized and existing by virtue of the laws of the State of Missouri, with its principal executive office in Tennessee. Corizon, Inc. is authorized to and does transact business in the State of New York.

25.     At all times mentioned herein, Corizon Health, Inc. and Corizon, Inc. (collectively "Corizon"), its site medical directors, physicians, nurses, physician assistants, clinicians, therapists, and other medical staff, provided medical, mental health, dental and ancillary services to prisoners at Rikers Island pursuant to a contract with the City of New York and/or DOHMH. In carrying out its duties, Corizon was required to ensure that its policies, practices and procedures, as well as the personnel it employed in the City's jails and hospital prison wards, complied with all City, DOC and DOHMH policies, the City's Minimum Standards for Health Care, and local, state and federal law.

26.     At all times mentioned herein, DOHMH and DOC were responsible for supervising Corizon and overseeing Corizon's hiring and supervision of its clinic staff.

27.     At all times mentioned herein, Corizon and its employees were acting color of law and performing governmental functions and/or quasi-governmental functions.

28.     At all times mentioned herein, Plaintiffs were confined to DOC custody, control and care.

29.     At all times mentioned herein, Defendant Sidney Wilson (hereinafter "Defendant Wilson"), was a physician assistant employed by Corizon.

30.     At all times mentioned herein, Defendant Wilson was acting under color of law. Defendant Wilson is being sued in his individual and official capacities.

31.     Upon information and belief, and at all times mentioned herein, the City and DOC owned, operated, maintained, managed, supervised, directed and controlled the jail facilities located within the City of New York, including but not limited to those located on Rikers Island.

32.     Upon information and belief, and at all times mentioned herein, the City, DOC and/or DOHMH owned, operated, maintained, managed, supervised, directed and controlled the clinics located within DOC facilities.

33.     Upon information and belief, and at all times mentioned herein, Corizon owned, operated, maintained, managed, supervised, directed and controlled the clinics located within the DOC facilities located on Rikers Island.

## **STATEMENT OF FACTS**

34.     Plaintiffs are all adult women confined to the City's custody and care at the Rose M. Singer Center on Rikers Island ("RMSC") during the relevant period of time.

35.     Corizon operates and maintains a clinic within RMSC where prisoners housed in

said facility can seek medications and medical care and treatment.

36.     During their time in DOC custody, Plaintiffs sought medical attention at the RMSC clinic.

37.     At all times mentioned herein, Defendant Wilson was a physician assistant employed by Corizon and assigned to the clinic at RMSC.

38.     At all times mentioned herein, the RMSC clinic was not monitored by security cameras.

39.     It is a well-established practice of Corizon clinic staff (and DOC officers) to engage in unlawful, forceful and/or coercive acts with prisoners in facility clinics as said areas are outside the view of monitored security cameras.

40.     Despite prior substantiated allegations of criminal conduct committed by clinic staff and correction officers in the clinic areas of DOC facilities against prisoners, including but not limited to sexual abuse and rape, bribery, beatings, passing contraband, threats, and coercing of statements and acts, as well as other unlawful conduct, the City of New York and Corizon have failed to install monitored security cameras, increase the degree of supervision thereat, and/or taken any other reasonable measures to provide greater security within the clinic areas.

41.     The City and Corizon's inadequate supervision of facility clinics by clinic staff and correction officers made it easy for Defendant Wilson to sexually harass, sexually assault, and rape the plaintiffs without being observed.

42.     As a result of the abuses alleged herein, Plaintiffs suffered and continue to suffer physical injuries and severe psychological and emotional distress, pain and suffering.

43.     Upon information and belief, Plaintiffs contemporaneously reported Defendant Wilson's abuses to DOC, DOHMH and/or Corizon staff; however, an investigation was never conducted into Plaintiffs' claims nor sexual assault and rape occurring in the RMSC clinic.

44.     Upon their release from DOC custody, Plaintiffs again reported Defendant Wilson's abuses, this time to the New York State Department of Corrections and Community Supervision's Office of Special Investigations, who referred the matter to the New York City Inspector General's Office for the Department of Correction.

45.     Upon information and belief, Defendant Wilson has not been prosecuted for his sexual abuses, assaults and rapes of Plaintiffs.

46.     Upon information and belief, Defendant Wilson has not been disciplined for his sexual abuses, assaults and rapes of Plaintiffs.

47.     Upon information and belief, the City and/or Corizon did not terminate Defendant Wilson's employment due to his sexual abuses, assaults and rapes of Plaintiffs.

Plaintiff K.A.

48.     At all times relevant hereto, Plaintiff K.A. was confined to the City's custody and care at the Rose M. Singer Center on Rikers Island ("RMSC") from on or about October 4, 2013 through February 4, 2015.

49.     Shortly after arriving at RMSC, Plaintiff K.A. went to the RMSC clinic seeking a prescription for a cream for her lips. Defendant Wilson asked K.A., "What are you willing to do for it?" This was the beginning of an improper and sexually abusive relationship between K.A. and Wilson that lasted approximately sixteen (16) months.

50.     On several occasions thereafter, Defendant Wilson performed unnecessary and unsupervised internal pelvic examinations on K.A. for his own sexual gratification, during which

K.A. could hear Defendant Wilson moaning and breathing heavily. Defendant Wilson did not have any medical basis to insist upon these internal pelvic examinations and did not use any medical equipment for these examinations. This was merely a pretext for Defendant Wilson to insert his fingers into K.A.'s vagina.

51.     On countless occasions, when K.A. would report to the RMSC clinic for sick call, regardless of the reason she was there, Defendant Wilson would instruct K.A. to remove her pants, expose her vagina to him, and he would then place his fingers inside her vagina in a sexual manner.

52.     On numerous occasions, Defendant Wilson had sexual intercourse with Plaintiff K.A., sometimes with and other times without condoms.

53.     As a matter of law, Plaintiff K.A. did not consent to engaging in any sexual acts or intercourse with Defendant Wilson.

54.     In consideration for Plaintiff K.A. not reporting these sexual abuses and rapes, Defendant Wilson routinely smuggled candy, cigarettes, Popeyes chicken, headphones and other contraband into RMSC and gave same to Plaintiff K.A. Defendant Wilson also issued prescriptions and/or medical orders that directed DOC to provide Plaintiff K.A. with an extra pillow and mattress. Defendant Wilson also coached K.A. in what to say to the neurologist in order for him/her to authorize unnecessary prescription medications, which he said she could then sell or trade to other prisoners for money.

55.     As with the other Plaintiffs, Defendant Wilson informed Plaintiff K.A. that he considered her to be a very special person to him, that he loved her, and that they would continue to be together romantically upon her release from DOC custody. To that end, Defendant Wilson told K.A. personal information about himself, his children, his employment, and his graduate

studies.

56.     On separate occasions, K.A. reported to Correction Officer Balanos and Social Worker Rodriguez that a physician assistant working in the RMSC clinic was sexually abusing her; however, she did not reveal Defendant Wilson by name as he threatened her on numerous occasions what would happen if she "betrayed" him. On another occasion, Plaintiff K.A. informed a different correction officer about the foregoing and she responded that sex for candy, food and cigarettes seemed like a fair exchange. None of these individuals reported K.A.'s allegations to their supervisors, as they were required to do.

Plaintiff L.R.

57.     At all times relevant hereto, Plaintiff L.R. was confined to the City's custody and care at the Rose M. Singer Center on Rikers Island ("RMSC") from on or about July 21, 2014 through November 2014.

58.     Shortly after arriving at RMSC, Plaintiff L.R. went to the RMSC clinic for a routine checkup. There, L.R. met Defendant Wilson, who started complimenting her appearance, telling her she was beautiful, sexy, and had nice lips and white teeth. Defendant Wilson offered L.R. pills, but she declined, which surprised Defendant Wilson and caused him to take a greater interest in her. This was the beginning of an improper and sexually abusive relationship between L.R. and Wilson that lasted four (4) months.

59.     On those occasions Plaintiff L.R. would report to the RMSC clinic, regardless of the reason she was there, Defendant Wilson would instruct L.R. to remove her pants, expose her vagina to him, and he would then place his fingers inside her vagina in a sexual manner.

60.     On numerous occasions, Defendant Wilson had vaginal, oral and anal sex with Plaintiff L.R., sometimes with and other times without condoms.

61.     As a matter of law, Plaintiff L.R. did not consent to engaging in any sexual acts or intercourse with Defendant Wilson.

62.     In consideration for Plaintiff L.R. not reporting these sexual abuses and rapes, Defendant Wilson routinely smuggled candy, cigarettes, Popeyes chicken, and gum into RMSC and gave same to L.R. Defendant Wilson also smuggled in a personal sex device and gave same to Plaintiff L.R. Additionally, on at least two occasions, Defendant Wilson had his cousin deposit money into L.R.'s inmate account on his behalf.

63.     As with the other Plaintiffs, Defendant Wilson informed Plaintiff L.R. that he considered her to be a very special person to him, that he loved her, and that they would continue to be together romantically upon her release from DOC custody. To that end, Defendant Wilson told Plaintiff L.R. personal information about himself, his children, his employment, and his graduate studies. Defendant Wilson even called L.R.'s grandmother's house on occasion.

Plaintiff S.A.

64.     At all times relevant hereto, Plaintiff S.A. was confined to the City's custody and care at the Rose M. Singer Center on Rikers Island ("RMSC") from March 2014 through November 2014.

65.     On numerous occasions, Defendant Wilson performed sexual acts and had sexual intercourse with Plaintiff S.A.

66.     As a matter of law, Plaintiff S.A. did not consent to engaging in any sexual acts or intercourse with Defendant Wilson.

67.     In consideration for Plaintiff S.A. not reporting these sexual abuses and rapes, Defendant Wilson routinely smuggled food, candy, cigarettes, and gum into RMSC and gave same to Plaintiff S.A.

68.     As with the other Plaintiffs, Defendant Wilson informed Plaintiff S.A. that he considered her to be a very special person to him, that he loved her, and that they would continue to be together romantically upon her release from DOC custody. To that end, Defendant Wilson told Plaintiff S.A. personal information about himself, his children, his employment, and his graduate studies.

History of Sexual Abuse and Rape at Rikers Island

69.     The sexual abuses experienced by Plaintiffs were a common occurrence at the RMSC clinic as, upon information and belief, PA Wilson also sexually abused, assaulted and raped other female prisoners.

70.     According to a recent survey conducted by the U.S. Department of Justice's Bureau of Justice Statistics entitled *Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-12*, the Rose M. Singer Center had the highest rate nationally[4] (5.6%) of jail inmates reporting being coerced by facility staff in the previous 12 months (without any use or threat of force), including being pressured or made to feel that they had to have sex or sexual contact with facility staff.

71.     Moreover, the DOJ survey found that 8.6% of RMSC inmates reported being sexually victimized[5] in the previous 12 months (compared to 3.2% nationally), with 5.9% reporting staff sexual misconduct[6] (compared to 1.8% nationally) and 5% reporting inmate-on-inmate victimization (compared to 1.6% nationally). Furthermore, 2.3% of RMSC inmates

---

[4] The Bureau of Statistics surveyed, *inter alia*, 52,296 jail inmates age 18 and older in 358 jails across the U.S.
[5] The DOJ survey defines "sexual victimization" as "all types of sexual activity, e.g., oral, anal or vaginal penetration; hand jobs; touching of the inmate's buttocks, thighs, penis, breasts, or vagina in a sexual way; abusive sexual contacts; and both willing and unwilling sexual activity with staff."
[6] The DOJ survey defines "staff sexual misconduct" as including "all incidents of willing and unwilling sexual contact with facility staff and all incidents of sexual activity that involved oral, anal, vaginal penetration, hand jobs, blow jobs, and other sexual acts with facility staff."

reported being physically forced by staff, 5.6% reported being pressured by staff, and 2.9% reported being sexually victimized by staff without force or pressure.

72.     Additionally, an August 4, 2014 report by the United States Attorney's Office for the Southern District of New York to the Mayor of the City of New York, Commissioner of the Department and Correction, and Corporation Counsel of the City of New York detailed the results of the Justice Department's investigation of the New York City Department of Correction jails on Rikers Island, conducted pursuant to the Civil Rights of Institutionalized Persons Act, and expressed "concern that DOC may be under-reporting sexual assault allegations."

73.     This underreporting of staff-on-inmate sexual assault is consistent with DOC and DOHMH's culture of failing to report other abuses by staff. In its August 2014 report, the U.S. Attorney stated,

> Additionally, in some cases, officers and supervisors pressure inmates not to report, using a phrase that is widely used and universally known at Rikers: "hold it down." This expression is code for, "don't report what happened." Inmates who refuse to "hold it down" risk retaliation from officers in the form of additional physical violence and disciplinary sanctions. <u>A DOC Associate Commissioner acknowledged</u> the underreporting of use of force by officers, noting that it would be "disingenuous" to claim that it doesn't exist. <u>The head of the Investigation Division also acknowledged</u> the problem.
>
> A <u>senior DOHMH official told us that he also was very familiar</u> with the phrase, "hold it down," and conveyed his belief that adolescents were often instructed not to report incidents. He indicated that one of the reasons inmates might agree to "hold it down" was that if inmates do not report a use of force, they themselves were then less likely to be infracted and disciplined. (emphasis added)

This suggests that the numerous instances of inmate sexual victimization by staff that have been reported represent only a small fraction of the actual sexual abuse that occurs on Rikers Island.

74.     Upon information and belief, Defendant Wilson's illegal and abusive behavior is common knowledge amongst his supervisors, co-workers and correction officers because, in part, his misconduct was open and notorious.

75.     Upon information and belief, no disciplinary action was taken against Defendant Wilson.

76.     Upon information and belief, the City and Corizon failed to adequately screen Defendant Wilson prior to offering him employment, failed to conduct a background check, failed to conduct a fingerprint check, ignored and/or missed numerous red flags prior to offering him employment and once employed, failed to adequately supervise him after employment, failed to conduct regular performance evaluations, and failed to follow strict professional and character standards, resulting in Defendant Wilson being hired despite being unqualified and unfit for this type of employment.

Failures of the City and Corizon in Their Hiring, Screening and Supervision of Clinic Staff and the Failures of the City to Prevent Officers and Corizon Staff From Smuggling Contraband Into Its Facilities

77.     The sexual victimization experienced by Plaintiffs by Defendant Wilson were a foreseeable result of the City and Corizon's deliberate indifference in their hiring and screening processes and supervision of clinic staff.

78.     On June 10, 2015, the New York City Department of Investigation released a critical review of Corizon, DOC and DOHMH's failures to engage in proper screening and supervision of staff, entitled *Investigation Finds Significant Breakdowns by Corizon Health Inc., the City-Contracted Health Care Provider in the City's Jails, and a Lack of Oversight by the City Correction and Health Departments.* Therein, the Department of Investigation detailed,

*inter alia*, numerous instances of Corizon employees smuggling contraband into Rikers Island facilities and being hired despite prior felony convictions. Said report found the following:

- Corizon failed to do adequate background checks on employees, resulting in employment of eight mental health staff with prior criminal convictions including Second Degree Murder and drug possession. Even where Corizon did have evidence of criminal activity – including possession of a controlled substance, burglary, and forgery – Corizon nonetheless hired these individuals.

- In 89 of the total 185 files reviewed, there was no evidence that Corizon conducted a candidate background investigation of any kind

- In 58 of the 137 [mental health clinician] files reviewed, there was no evidence that Corizon verified the candidates' professional licenses prior to employment. Further, Corizon failed to monitor the licensing of employees after they began work.

- Corizon's failures continued even after employment. Only 8 of 134 employees who have worked at Corizon for over one year had performance reviews in their files covering each year of their service at Corizon.

The Department of Health and Mental Hygiene (DOHMH), along with DOC, have responsibility for supervising Corizon, to ensure, among other things, that hired employees have been properly vetted. They failed to do so.

In perhaps the most concerning example of this failed supervision, at the outset of this investigation, certain DOC staff informed DOI that DOC had no ability to conduct background checks of the staff that Corizon sent to Rikers Island. In fact, however, DOC did have both the authority and the obligation to conduct fingerprint checks of such employees. As a result, Corizon sent fingerprint cards to DOC on a regular basis; but, rather than forwarding the cards to the State to run checks, a DOC Deputy Commissioner allowed the cards to pile up on a shelf outside his office. The cards were discovered, unprocessed, by DOI in the course of its investigation.

Indeed, DOC only began processing fingerprints for Corizon employees in May 2015, six months after DOI informed DOC – including Commissioner Ponte – of this basic failure.

DOHMH similarly failed to adequately supervise Corizon. For example, DOHMH did not review staff files to see if Corizon was properly

supervising and reviewing employee performance. As noted above, such evaluations rarely took place. Additionally, DOHMH never followed up to make sure the fingerprints submitted to DOC by Corizon were actually processed.

Said report also found that "[t]he failure to require or even verify basic candidate information such as references, prior employment, and professional licensure is, at best, emblematic of Corizon's sloppiness in screening its candidates. At worst, it demonstrates <u>Corizon's indifference toward the quality of the employees it hires to work within DOC's jails</u>, and, as discussed below, the quality of care these employees deliver to DOC inmates." (emphasis added)

79.     Additionally, seven months prior to the aforesaid report, on November 6, 2014, the New York City Department of Investigation released a critical review of DOC's failure to prevent smuggling of contraband into its facilities, entitled *New York City Department of Investigation Report on Security Failures at City Department of Correction Facilities*. "The Report documents the recent arrests of six Correctional staff and a [Corizon] nurse regarding the smuggling of contraband…[which is] then distributed to inmates. The failure to prevent smuggling to date – especially smuggling by Correction Officers and staff – has two causes: First, the previous protocols for screening staff upon entrance to the facility were not sufficient to actually detect and prevent illegal conduct. Second, even these ineffective protocols were not consistently followed in practice."

80.     As a result of the City and Corizon's deliberate indifference to the constitutional rights of prisoners confined to their custody and care by virtue of their grossly negligent hiring and screening processes and supervision of clinic staff, including but not limited to Defendant Wilson, Plaintiffs suffered the constitutional violations aforesaid.

81.     As a result of City and Corizon's deliberate indifference to the constitutional rights of prisoners confined to their custody and care by virtue of their grossly negligent efforts

to prevent contraband smuggling by officers and staff, including but not limited to Defendant Wilson, Plaintiffs suffered the constitutional violations aforesaid.

### FIRST CLAIM FOR RELIEF:
### CLAIMS AGAINST THE CITY OF NEW YORK AND CORIZON
_____

82.     Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "81", inclusive, of this Complaint, as if same were fully set forth herein.

83.     As set forth above, the City and Corizon facilitated the rape and sexual abuse of the inmates committed to its custody, including but not limited to the plaintiffs.

84.     By their policies, practices, acts, and omissions, the City and Corizon caused Plaintiffs to be subjected to sexually assaulted, raped and otherwise sexually victimized, in violation of their due process rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.

85.     The City and Corizon's failure to institute adequate safeguards in their hiring, screening and supervision practices demonstrates their deliberate indifference to the safety and well-being of inmates in their custody, care and control.

86.     The City, through DOC and DOHMH, was grossly negligent in failing to (a) conduct background checks of staff conditionally hired by Corizon, (b) conduct fingerprint checks of staff conditionally hired by Corizon, (c) oversee Corizon's hiring of clinical staff, and (d) conduct telephone, visitation history and inmate account checks for prospective Corizon employees and continue to perform periodic checks after employment.

87.     The City, through DOC and DOHMH, was grossly negligent in failing to supervise Corizon to ensure, among other things, that Corizon (a) hired employees that were properly vetted, (b) properly supervised and reviewed employee performance, (c) verified

applicant's backgrounds and professional licenses prior to employment and continued to monitor same during their employment, (d) that its employees were not smuggling contraband into Rikers Island for inmates, and (e) that its employees were not calling prisoners' families or depositing funds into their inmate accounts.

88.     The City, through DOC and DOHMH, was grossly negligent in failing to adopt policies, practices and procedures and/or enforce those already in place that (a) require Corizon to follow strict professional and character standards when assessing and vetting applicants for employment in DOC facilities, (b) require the City and Corizon to conduct follow-up background investigations into disclosures that call an applicant's judgment and character into question, (c) require Corizon to screen applicants specifically for vulnerability to corruption, contraband smuggling, and committing sexual abuse, (d) require Corizon to compel candidates to disclose and describe the circumstances of all prior convictions and arrests and prior employment disciplinary history, (e) set training and re-training requirements for Corizon staff working in DOC facilities, (f) set performance requirements for Corizon staff working in DOC facilities, and (g) require the DOC an Corizon to perform pre-employment and periodic post-employment checks to ensure Corizon employees are not calling prisoners' families or depositing funds into inmates' accounts.

89.     Corizon was grossly negligent in that it (a) hired employees that were not properly vetted, (b) failed to supervise and review employee performance, (c) failed to verify applicant's professional licenses prior to employment and continue to monitor same during their employment, (d) failed to ensure that its employees were not smuggling contraband into Rikers Island for inmates, (e) failed to conduct adequate background checks on employees resulting in employment of numerous individuals with serious criminal convictions including Second Degree

Murder and drug possession, (f) <u>knowingly</u> hired individuals that did not fully disclose prior misdemeanor and felony convictions, including one individual who was hired despite disclosing 13 prior convictions, (g) <u>knowingly</u> hired individuals despite having evidence of their prior criminal activity, (h) failed to conduct any background check of any kind nearly half the time, (i) failed to follow strict professional and character standards when assessing applicants for employment in DOC facilities, (j) failed to conduct follow-up background investigations into disclosures that call an applicant's judgment and character into question, (k) failed to screen applicants specifically for vulnerability to corruption, contraband smuggling, and committing sexual abuse, (l) failed to compel candidates to disclose and describe the circumstances of all prior convictions and arrests and prior employment disciplinary history, and (m) had an otherwise substantially flawed and deficient application, interview and screening process of candidates, and (n) failed to adopt policies, practices and procedures and/or enforce those already in place regarding the foregoing.

90.     The City, through DOC and DOHMH, was grossly negligent in its responsibility to (a) conduct background checks and fingerprint checks of Corizon applicants, (b) review Corizon staff files to ensure Corizon was properly supervising and reviewing employee performance, and (c) prevent contraband from being smuggled into its facilities.

91.     The City and Corizon know that clinical staff have more frequent, largely unrestricted, and lengthier private interaction with inmates than DOC staff. These defendants are also aware, based upon prior allegations and investigations, that clinical staff have ample opportunities to engage in misconduct with inmates and smuggle contraband. Yet, despite the foregoing, the City and Corizon subject clinical staff candidates to a much less extensive pre-employment application and screening process then correctional officers and do not have

equivalent post-employment training, re-training, monitoring and supervision requirements.

92.     Due to prior allegations and investigations, the City and Corizon knew that officers and clinical staff subject female prisoners (victims of prior sexual assault in particular) to recurrent and ongoing acts of rape and other sexual abuse, including forced sexual intercourse, oral sexual acts, sexual touching, gratuitous internal pelvic examinations, demeaning sexual comments, and physical and verbal intimidation to deter inmates in custody from reporting such sexual abuse, but have failed to take reasonable measures to prevent or curb this pattern of abuse.

93.     Due to prior allegations and investigations, the City and Corizon knew that officers and clinic staff who rape and sexually abuse inmates routinely leave their assigned posts, allow the abused inmates into areas where they are not permitted, congregate in the facility's clinic and other areas that are known to be outside the view of monitored security cameras, and engage in open and public behavior that is obviously suggestive of inappropriate personal relationships and sexual abuse of inmates. The abusing officers and clinic staff often provide their victims with contraband items. These behaviors are known and visible to officers, clinic staff and prisoners alike. The City and Corizon failed to take action despite knowledge of these activities and has not enforced policies intended to identify, address, and prohibit sexual abuse of inmates by clinic staff.

94.     The City and Corizon permit clinic staff virtually unfettered access to inmates and unmonitored areas where they can rape and sexually abuse inmates with minimal risk of detection.

95.     The City has failed to ensure that security cameras are installed in these high risk areas and, where cameras are installed, has failed to ensure that they are functional.

96.     The City and Corizon have failed to employ obvious measures to reduce the risk

of rape and sexual abuse of inmates, such as heightened monitoring of behavior indicative of ongoing sexual abuse, appropriately placed and functional surveillance cameras installed and maintained without staff knowledge, exit interviews of incarcerated inmates upon transfer or release, random interviews of staff, and more frequent, unannounced rounds by supervisory officials.

97.     The City and Corizon's system for the reporting and investigation of rape and sexual abuse is grossly inadequate. It relies almost entirely on inmates reporting their own rape and sexual abuse and then fails to take appropriate action to protect those who do come forward or to punish their abusers.

98.     The City and Corizon have failed to train correction officers, mental health staff, and clinic staff to take reports of rape and sexual abuse seriously and to give adequate weight to the credibility of inmate witnesses.

99.     Pursuant to City and Corizon policy and practice, inmates who report rape and sexual abuse are not protected from retaliation.

100.     The City and Corizon do not consistently investigate reports of rape or sexual abuse in a prompt or thorough manner, if at all. Once an inmate reports that he or she has been raped or otherwise sexually abused, weeks can pass before an investigation begins. Regardless of what an investigation reveals, the subjects are rarely disciplined, and inmates are rarely informed of the outcome.

101.     The City and Corizon treat inmates as adversaries rather than allies. In the case of Plaintiffs, for example, these defendants failed to investigate allegations made to officers and clinic staff.

102.     The City and Corizon's long-standing failure and/or refusal to supervise the

corrections officers and clinical staff under its/their control, and their own supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover-up that has caused or contributed to the deprivation of the plaintiffs' rights.

103.     Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, site medical directors, and the officers and clinical staff they supervise.

104.     The failures and refusals by the City and Corizon to hold their officers and clinic staff accountable is a proximate cause of the injuries and abuses sustained by the plaintiffs, and undoubtedly dozens of other women.

105.     Through promotions and other financial and status incentives, the City and Corizon have the power to reward officers and clinic staff who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. The City and Corizon's actions and omissions have created and maintained the perception that supervisors, officers and clinic staff who turns a blind eye towards evidence of sexual harassment, intimidation, abuse and rape, contraband smuggling by staff for inmates, and fail to report or investigate these incidents, will suffer no damage to his or her career or financial penalty.

106.     The pattern of unchecked sexual abuse by clinic staff and the persistent failure or refusal of the City, DOC, DOHMH, and Corizon to adequately supervise these persons and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuses claimed by the plaintiffs.

107.     The foregoing customs, policies, usages, practices, procedures and rules of the City and Corizon constituted deliberate indifference to the safety, well-being and constitutional

rights of the plaintiffs and were the direct and proximate cause of the constitutional violations suffered by the plaintiffs as alleged herein.

108.    The foregoing customs, policies, usages, practices, procedures and rules of the City and Corizon were the moving force behind the constitutional violations suffered by the plaintiffs as alleged herein.

109.    As set forth above, the City and Corizon failed to protect Plaintiffs from known and foreseeable harm.

110.    As set forth above, the City and Corizon failed to intervene, mitigate and/or stop the events alleged herein.

111.    As set forth above, the City and Corizon knew of and consciously disregarded an excessive risk to Plaintiffs' health and safety.

112.    Due to the City and Corizon's practices and policies aforesaid, the plaintiffs suffered and continue to suffer physical, psychological and emotional injuries, pain and suffering.

**SECOND CLAIM FOR RELIEF:**
**CLAIMS AGAINST SIDNEY WILSON**

113.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "112", inclusive, of this Complaint, as if same were fully set forth herein.

114.    At all relevant times, Sidney Wilson was an employee of Corizon, the City's contracted medical provider at Rikers Island.

115.    At all relevant times, Defendant Wilson was acting under color of state law.

116.    As set forth above, Defendant Wilson raped and sexually assaulted Plaintiffs.

117.    As set forth above, Defendant Wilson performed medically unnecessary internal

pelvic examinations on Plaintiffs for his own sexual gratification.

118.    As a result of the foregoing, Plaintiff suffered and continues to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

119.    As set forth above, Defendant Wilson did violate Plaintiffs' constitutional rights and was deliberately indifferent to and/or consciously disregarded an excessive risk to Plaintiffs' health and safety.

## PENDANT STATE CLAIMS

120.    This action is commenced, including all applicable tolls, within the applicable statutes of limitations.

121.    This action falls within one or more of the exceptions set forth in N.Y. C.P.L.R. §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: SEXUAL ASSAULT, RAPE, AND BATTERY

122.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "121" inclusive, of this Complaint, as if same were fully set forth herein.

123.    As set forth above, Defendant Wilson did sexually harass and intimidate Plaintiffs.

124.    As set forth above, Defendant Wilson did have nonconsensual sexual intercourse and contact with Plaintiffs.

125.    Pursuant to New York Penal Law §130.05(3)(f), Plaintiffs, as a matter of law, are incapable of consenting to having sexual intercourse or sexual contact with Defendant Wilson.

126.    As set forth above, Defendant Wilson did sexually assault and rape Plaintiff.

127.    As set forth above, Defendant Wilson did consciously commit criminal

wrongdoing.

128.     As a result of the foregoing, Plaintiffs suffered and continue to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

**SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**NEGLIGENCE**
_____

129.     Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "128", inclusive, of this Complaint, as if same were fully set forth herein.

130.     Corizon, its agents, servants and employees, were negligent in the instances alleged herein in their operation, supervision, enforcement, maintenance, management and control of the RMSC clinic in the general and as it relates to the plaintiffs in particular; in failing to act reasonably in the instance; in failing to protect the health and welfare of the plaintiffs; in failing to provide the plaintiffs with reasonably safe conditions; in failing to quickly and diligently intercede on behalf of plaintiffs; in failing to protect plaintiffs; in setting a trap for the plaintiffs; in failing to take cognizance of a dangerous and escalating situation; in failing to be truthful and consistent in reporting sexual violence and victimization; in violating the plaintiffs' civil, statutory and common law rights; in infringing upon the freedoms afforded to the plaintiffs; in being reckless with the plaintiffs' health, safety, and security; in causing, creating and/or allowing unlawful conditions to be and remain; in being disinterested, indifferent, apathetic and/or uninvolved during incidents of sexual violence or victimization; in failing to timely prevent and/or mitigate the subject incidents despite having notice, time and opportunity to do so; in failing to give the plaintiffs notice and/or warning; in causing and/or allowing the plaintiffs to be raped, sexually assaulted and abused; in causing and creating a dangerous condition conducive to causing harm; in causing and allowing a dangerous and hazardous condition to

exist; in creating and allowing a nuisance to be and remain; in failing to provide for the safety of the plaintiffs; in failing to seek proper training; in failing to be adequately trained; that the alleged incidents could not have occurred but for the negligence, in whole or in part, of Corizon, its agents, servants and employees; in failing to protect the plaintiffs in each and every instance; in causing, permitting and/or allowing the plaintiffs to be sexually harassed, threatened, menaced, sexually assaulted, and raped; in denying and/or delaying the plaintiffs' access to timely, due and adequate medical care for the injuries they suffered; in failing to fully, faithfully and reasonably investigate Plaintiffs allegations and prior allegations made against Defendant Wilson; in failing to have an adequate policy to ensure the truthful and consistent reporting of sexual violence and victimization; in being deliberately indifferent to the plaintiffs' health, safety, and security; in causing and allowing clinic areas to be and remain a violent and dangerous place for prisoners; in causing, creating and/or allowing unlawful conditions to be and remain; in having a policy, either written or by custom, which accepts and/or promotes disinterest, indifference, apathy and/or uninvolvement during incidents of sexual violence and victimization; in failing to adequately train their clinic staff; in failing to have trained personnel; and Corizon, its agents, servants and employees, were otherwise negligent, careless and reckless in the instance.

131.    As a result of the foregoing, Plaintiffs suffered and continue to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

### THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: VIOLATION OF NEW YORK CONSTITUTION AND STATUTES

132.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "131", inclusive, of this Complaint, as if same were fully set forth herein.

133.    As set forth above, Corizon and Defendant Wilson deprived Plaintiffs of their rights to be free from gratuitous and excessive force and punishment, to be free from cruel and unusual punishment, to have timely and appropriate medical care, and to due process of law, as guaranteed to them by New York's Constitution, the New York Civil Rights Laws, the New York Health Laws, and the Charter of the City of New York.

134.    As a result of the foregoing, Plaintiffs suffered and continue to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

**FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION**
_____

135.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "134", inclusive, of this Complaint, as if same were fully set forth herein.

136.    As set forth above, Corizon was negligent, careless and reckless in the hiring, screening, training, retention, and supervision of Defendant Wilson in that said employee lacked the character, mental capacity, experience, ability, maturity, sensibility and intelligence to be and remain employed by Corizon; in failing to exercise due care and caution in its hiring, screening, training, retention, and supervision practices; in failing to suspend and/or terminate employees when such action was either proper or required; and in being otherwise careless, negligent and reckless in the instance.

137.    Corizon's failure to enforce the laws of the United States of America, the State of New York and the Charter, rules and regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of the prisoners in their care and Plaintiffs in particular, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

138.    Corizon knew or should have known in the exercise of reasonable care the propensities of Defendant Wilson to engage in the wrongful conduct alleged herein.

139.    Corizon knew or should have known that its policies, customs and practices, as well as its negligent hiring, screening, retention, supervision, training, appointment and promotion of its agents, servants and employees, created an atmosphere where the most prominent offenders felt assured that their most brazen acts of abuse, misconduct and neglect would not be swiftly and effectively investigated and prosecuted.

140.    That the mistreatment and abuse of the plaintiffs set forth above was the reasonably foreseeable consequence of Corizon's negligent conduct.

141.    The aforesaid negligence of Corizon in its hiring, screening, retention, supervision, training, appointment and promotion practices resulted in the sexual harassment, intimidation, assault and rape of Plaintiffs; the abuses of Defendant Wilson being trivialized, minimized and/or covered up; the cause, nature and extent of the plaintiffs' injuries being trivialized, minimized and/or covered up; the plaintiffs' constitutional, statutory and common law rights to be violated; and Plaintiffs to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

**FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:**
**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
_____

142.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "141", inclusive, of this Complaint, as if same were fully set forth herein.

143.    As set forth above, Defendant Wilson's aforesaid conduct was intentional, malicious and excessive, and served no reasonable or legitimate medical or penological interest.

144.    As set forth above, Corizon and Defendant Wilson's aforesaid conduct was

negligent and served no reasonable or legitimate medical or penological interest.

145.    These defendants' intentional, reckless and/or negligent infliction of emotional and mental distress constituted misconduct of an egregious and outrageous nature that exceeds all bounds usually tolerated by society and unreasonably endangered Plaintiffs' physical, psychological and emotional wellbeing.

146.    As a result of the foregoing, Plaintiffs suffered and continue to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

### SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW: FAILURE TO PROTECT

147.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "146" inclusive, of this Complaint, as if same were fully set forth herein.

148.    As set forth above, Corizon, its agents, servants and employees, failed to protect Plaintiffs from known and foreseeable harm.

149.    As set forth above, Corizon caused and created the dangerous conditions which gave rise to the incidents and injuries alleged herein.

150.    As set forth above, no one attempted to intervene, mitigate, stop or prevent the subject incidents at any time during the happening of the incidents or thereafter.

151.    As set forth above, no one attempted to investigate the subject incidents or Defendant Wilson upon same being reported to them.

152.    As set forth above, Corizon, its agents, servants and employees, knew of and consciously disregarded excessive risks to Plaintiffs' security, health and safety.

153.    That due to said defendant's failure to protect the plaintiffs, they suffered and continue to suffer severe and permanent physical, psychological and emotional injuries, pain and

suffering.

## SEVENTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW:
## PRIMA FACIE TORT
_____

154.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "153" inclusive, of this Complaint, as if same were fully set forth herein.

155.    The aforesaid conduct of Defendant Wilson, as well as Corizon's delay and failure to act, caused harm to be inflicted upon the plaintiffs out of disinterested malevolence and was the proximate cause of the injuries and damages suffered by the plaintiffs.

156.    As a result of the foregoing, Plaintiffs suffered and continue to suffer severe and permanent physical, psychological and emotional injuries, pain and suffering.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues in this matter.

## RELIEF

Plaintiffs request the following relief jointly and severally as against all of the defendants:

1.    An award of compensatory damages against all defendants in an amount to be determined at trial;

2.    An award of punitive damages against Corizon and Sidney Wilson in an amount to be determined at trial;

3.    An award of attorney's fees, expert's fees, costs and disbursements; and

4.    Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       June 24, 2016

Yours, etc.,

**HELD & HINES, L.L.P.**
*Attorneys for Plaintiffs*
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com


By: _____/s/_____
          Philip M. Hines, Esq.

## <u>ATTORNEY VERIFICATION</u>

PHILIP M. HINES, an attorney duly licensed to practice in the courts of the State of New York, hereby affirms the following under penalties of perjury:

That I am a member of the law firm of HELD & HINES, L.L.P., attorneys for the plaintiff in the within action; that I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; and that the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters, I believe them to be true. The reason this Verification is made by me and not by the plaintiffs is that said plaintiffs resides outside of the County in which the Affirmant's office is located.

The grounds of my belief as to all matters stated upon my own knowledge are as follows: the records, reports, contracts, and documents contained in the plaintiffs' file.

_____/s/_____
PHILIP M. HINES, ESQ.

Affirmed to this 24th
day of June, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
K.A., S.A., L.R., and JANE DOES 1-25,

                                                        Docket No.

             Plaintiffs,

     -against-

CITY OF NEW YORK, CORIZON HEALTH, INC.,
CORIZON, INC., and SIDNEY WILSON, individually
and in his official capacity,

             Defendants.
-------------------------------------------------------------------X

## VERIFIED COMPLAINT

**HELD & HINES, LLP**
**Attorneys for Plaintiff(s)**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

                            **Signature (Rule 130-1.1-a)**

                  _____/s/_____
                  **PHILIP M. HINES, ESQ.**