UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

K.A., et al.,

          Plaintiffs,

    -v-                            No.  16-CV-04936-LTS-JW

CITY OF NEW YORK,
et al.,

          Defendants.

--------------------------------------------------------x


MEMORANDUM OPINION AND ORDER

      Plaintiffs K.A., S.A., L.R., L.J., and Jane Does 1-25 ("Plaintiffs") bring this action against the City of New York (the "City"), Corizon Health, Inc., Corizon, Inc.,[1] and Sidney Wilson (collectively, the "Defendants").  In their eight-count Second Amended Complaint, (docket entry no. 126 ("SAC")), Plaintiffs allege that Defendants violated various federal and state laws in connection with the alleged sexual abuse of Plaintiffs during their incarceration at the Rose M. Singer Center on Rikers Island ("RMSC").

      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. sections 1331, 1343, and 1367.  The City moves to dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Docket entry no. 144.)  The Court has considered the parties' submissions carefully, (docket entry no. 145 ("Def.

---

[1]     The Corizon entities have been terminated as defendants in this case as a result of their bankruptcy filing.  (Docket entry no. 245.)  Wilson and the City are the only remaining defendants.

Mem."); docket entry no. 229 ("Pls. Mem."); docket entry no. 241 ("Def. Reply")), and, for the following reasons, the City's motion is granted in full.

Plaintiffs also move for leave to file a third amended complaint (docket entry no. 188), which the City opposes. The Court has considered the parties' submissions carefully, (docket entry no. 184 (the "Proposed Third Amended Complaint" or "PTAC"); docket entry no. 185 ("PTAC Redline"); docket entry no. 190; docket entry no. 231; docket entry no. 242[2]), and, for the following reasons, Plaintiffs' motion to amend is denied.

BACKGROUND[3]

The following summary is drawn from the Second Amended Complaint, the well-pleaded allegations of which are presumed to be true for the purposes of this motion.[4]

Plaintiffs are all adult women who were confined at the Rose M. Singer Center on Rikers Island ("RMSC") for various periods of time from October 2013 to February 2015. (SAC ¶¶ 34, 52, 61, 68, 75.) During that period, Defendant Sidney Wilson, a physician assistant employed by Corizon and working at RMSC, sexually abused Plaintiffs in a variety of ways. (Id. ¶¶ 3, 37.)

Plaintiff K.A. was confined at RMSC from October 2013 to February 2015 and was abused by Defendant Wilson on at least 8-10 occasions during this period. (Id. ¶ 55.) She was the only Plaintiff who reported Defendant Wilson's behavior; she reported to

---

[2]    Defendant Wilson did not file an opposition to Plaintiffs' motion to amend.

[3]    Pin cites to documents filed on ECF refer to ECF-designated page numbers.

[4]    The Proposed Third Amended Complaint proffers no new factual allegations. (See docket entry no. 185 at 1 (Plaintiffs' cover letter to the PTAC).)

"Ms. Villanos,"[5] "Social Worker Rodriguez," and "Correction Officer West in Ride Support" that a physician assistant at RMSC was abusing her.  (Id. ¶ 59.)  When she made these reports, she did not give Defendant Wilson's name.  (Id.)  None of her reports were ever passed on to RMSC supervisors.  (Id.)

Plaintiffs L.R., S.A., and L.J. were confined at RMSC from July to November 2014, March to November 2014, and December 2013 to December 2014, respectively, and each was abused by Defendant Wilson multiple times during this period.  (Id. ¶¶ 61, 64, 68, 71, 75, 77.)  Plaintiffs Jane Does 1-25 are other anticipated victims of Defendant Wilson; Plaintiffs' counsel is presently aware of at least three other victims.  (Id. ¶ 19 & n.3.)

Defendant Wilson gave contraband, which he smuggled into RMSC, to Plaintiffs K.A., L.R., and S.A. in exchange for them not reporting his sexual misconduct.  (Id. ¶¶ 57, 66, 73.)  The contraband included candy, cigarettes, and Popeyes chicken.  (Id. ¶¶ 57, 66, 73.)  Defendant Wilson sexually abused Plaintiffs in various ways during the examinations he performed at the RMSC clinic, including forcible touching, sexual harassment, unnecessary pelvic and breast examinations, and rape.  (Id. ¶¶ 3, 167.)  These examinations occurred in a cubicle with approximately five-foot-tall walls, no ceiling, and a movable privacy screen in place of a door.  (Id. ¶ 128.)  The cubicle was in the middle of the clinic where staff routinely walked by.  (Id.)

Defendant Wilson also routinely failed to adhere to a policy that mandated the presence of a chaperone whenever a healthcare professional performed an "intimate examination," defined as "any examination, investigation or treatment that involves the rectum,

---

[5]     Plaintiffs allege that Ms. Villanos was one of "defendants' employees" without specifying which defendant employed her (the Corizon entities or the City), her position, or her role.  (SAC ¶ 59.)

genitalia or breasts."  (<u>Id.</u> ¶¶ 95-96.)  Plaintiffs allege that sounds associated with Wilson's abusive activities were audible to those outside of the examination cubicle and that the smell of contraband food, which he provided to the Plaintiffs in exchange for their silence, could also be perceived by others in the area.  (<u>Id.</u> ¶ 43.)

Plaintiffs' Second Amended Complaint paints a deeply disturbing picture of coercion and abuse of vulnerable individuals in the City's custody, by a person who had been entrusted with their health care and thus had a significant degree of power over them, and of failures of other front-line personnel to intervene, report up, or take other appropriate action. The issue raised by the City's motion to dismiss, however, is not whether the abuse Plaintiffs describe was wrongful.  It is whether the City can be held liable under 42 U.S.C. section 1983 ("Section 1983") for the injuries associated with Plaintiffs' deeply traumatic experiences.  For the reasons explained below, the Court concludes that Plaintiffs' Second Amended Complaint is insufficient to support their claim that the City can be held liable for violations of their constitutional rights under Section 1983.

<u>DISCUSSION</u>

The City moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  The complaint must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).  The Court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  <u>Faber v. Metro. Life Ins. Co.</u>, 648 F.3d 98,

104 (2d Cir. 2011) (citation and internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The City argues that the Complaint against it must be dismissed because Plaintiffs have failed to allege facts sufficient to support a municipal liability claim under Section 1983 that meet the standards established by the Supreme Court in Monell v. Department of Social Services, 436 U.S. 658 (1978).  For the following reasons, the City's motion to dismiss is granted, and the Second Amended Complaint is dismissed in its entirety.

Section 1983

To state a claim under Section 1983, a plaintiff must allege that a person acting under the color of state law, or a "state actor," violated a right secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42, 48-49 (1988).  To establish municipal liability under Section 1983, a plaintiff must show that an action "pursuant to official municipal policy of some nature caused [the] constitutional tort." Monell, 436 U.S. at 691.  A plaintiff may satisfy the "official municipal policy" requirement by alleging facts supporting the existence of one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

Plaintiffs proffer four different theories of <u>Monell</u> liability in support of their claims against the City: (1) a widespread practice or custom of sexual abuse in the City's jail clinics, (2) a failure to train staff (i) that sexual abuse was prohibited and (ii) on reporting and identifying sexual abuse, (3) a failure to supervise staff vis-à-vis certain policies, and (4) a failure to screen staff during the hiring process. (Pls. Mem. at 15-31.) For the following reasons, none of these theories plausibly states a claim.

<u>Widespread Practice as Custom</u>

First, Plaintiffs allege that the City had a custom of indifference to the sexual misconduct occurring in its jail clinics and that the City's widespread "code of silence" and culture of not reporting sexual misconduct caused and facilitated the abuse that they suffered. (SAC ¶¶ 125-26; Pls. Mem. at 17-26.) While there is no question that Defendant Wilson's conduct was illegal, Plaintiffs fail to plead non-conclusory allegations sufficient to demonstrate that the City was, or must have been, on notice of Defendant Wilson's behavior, or that the City had a widespread custom or practice of sexual misconduct or tolerance of such misconduct.

To prevail, Plaintiffs must show "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware." <u>Brandon</u>, 705 F. Supp. 2d at 276-77 (citations omitted); <u>see also</u> <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 126 (2d Cir. 2004) (A plaintiff must "show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." (citing <u>Sorlucco v. New York City Police Dep't</u>, 971 F.2d 864, 870-71 (2d Cir. 1992))). The custom must be "permanent" and "well settled," <u>Monell</u>, 436 U.S. at 691 (citations omitted), and it must be the

"moving force [behind] the constitutional violation," <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989) (citations omitted).

Establishing a widespread custom requires a significant frequency of occurrences. Although "[t]here is no set number of incidents that make a practice 'widespread,'" <u>Mumin v. City of New York</u>, 760 F. Supp. 3d 28, 59 (S.D.N.Y. 2024) (citations omitted), it is clear that "isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability," <u>Jones v. Town of E. Haven</u>, 691 F.3d 72, 81 (2d Cir. 2012) (citations omitted). "[A] plaintiff must allege more than one instance of a constitutional violation" and "typically must also adequately plead similar incidents involving others." <u>Loc. 3599, NYC Dep't of Env't Prot. Tech. Pro. Emps. v. City of New York</u>, No. 23-CV-1035-JGLC, 2024 WL 966077, at *13 (S.D.N.Y. Mar. 6, 2024) (citing cases); <u>see</u> <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citation omitted)).

Plaintiffs, consisting of four different women, allege that Defendant Wilson sexually abused them, repeatedly, within a sixteen-month window. (SAC ¶ 127.) Plaintiffs allege that "how Wilson abused them, what he said to them, what he promised them, and what he did for them are all remarkably similar and give credence to each other" and that the "frequency and duration" of the incidents is sufficient to establish custom. (Pls. Mem. at 24.) Plaintiffs' allegations of their own personal experiences, however, are not sufficient to establish a widespread custom because their allegations are isolated to a single bad actor (Wilson), and there is no evidence that others participated in Plaintiffs' abuse or that supervisory officials were aware. <u>See</u> <u>Mumin</u>, 760 F. Supp. 3d at 59 ("[C]ourts have found a wide range of instances,

including allegations of two, three, four, eight, and even thirteen examples, insufficient to plausibly allege a municipal custom." (citations and internal quotation marks omitted)).

Plaintiffs' only other specific example of known sexual abuse within the City's jail clinics is the case of an RMSC clinic doctor who was criminally charged in 2010 for sexually abusing an inmate (SAC ¶ 84 n.5 (citing People v. Franck Leveille)), but charges alone, especially without adjudication,[6] are insufficient to establish the existence of a widespread custom or practice.  Bethune v. Westchester Cty., No. 18-CV-3500-NSR, 2020 WL 1032508, at *5 (S.D.N.Y. Mar. 2, 2020) ("[M]ere citations to lawsuits, even if they did involve comparable conduct, do not alone establish a custom or practice that is widespread and persistent, particularly if the lawsuits did not result in an adjudication of liability." (citations omitted)).  Even considered together, Wilson's and Leveille's actions are insufficiently widespread because they are isolated to only two bad actors.  See Mumin, 760 F. Supp. 3d at 59.

Plaintiffs also ask the Court to take judicial notice of three cases in order to infer a widespread custom of sexual misconduct: M.T. v. City of New York, 325 F. Supp. 3d 487 (S.D.N.Y. 2018) (alleging a 2012 rape of a transgender inmate by a correction officer in a Corizon clinic); Thompson v. Corizon Health, Inc., No. 18-CV-7139-LGS, docket entry no. 1 (S.D.N.Y. Aug. 8, 2018) (alleging that female Corizon employees working as health services professionals at Rikers Island were subjected to sexual harassment and unpaid overtime); and Jane Doe 1 v. City of New York, No. 15-CV-3849-AKH, docket entry no. 1 (S.D.N.Y. May 19, 2015) (alleging that two female inmates were repeatedly sexually abused by a correctional officer at RMSC).  "A plaintiff may [ ] plead the existence of de facto customs or policies 'by citing to complaints in other cases that contain similar allegations.'"  A.P. v. Dannhauser, No.

---

[6]    Franck Leveille absconded from the country while he was out on bail.  (SAC ¶ 84 n.5.)

23-CV-6687-PKC-RML, 2025 WL 917233, at *7 (E.D.N.Y. Mar. 25, 2025) (quoting Gaston v. Ruiz, No. 17-CV-1252-NGG-CLP, 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018)). "Such complaints must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." Buari v. City of New York, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021) (citations omitted). Measured against this standard, Plaintiffs' arguments fail. M.T. was not contemporaneous, as liability was adjudicated in 2018, years after Plaintiffs' abuse here concluded; Thompson was dismissed pursuant to a settlement agreement, Thompson v. Corizon Health, Inc., No. 18-CV-7139-LGS, docket entry no. 207 (S.D.N.Y. Oct. 13, 2021); and, Jane Doe 1 was also dismissed pursuant to a settlement agreement, Jane Doe 1 v. City of New York, No. 15-CV-3849-AKH, docket entry no. 397 (S.D.N.Y. May 26, 2017).

Likewise, Plaintiffs cite several newspaper articles to support their allegation that sexual misconduct was widespread in the City's jail clinics. (SAC ¶ 84 n.4; Pls. Mem. at 19.) All of these articles, however, were published after all the Plaintiffs had left custody,[7] so they are insufficient to establish that the City had notice of any widespread custom at a time relevant to Plaintiffs' allegations.

Next, Plaintiffs allege that the City must have been aware of Plaintiffs' heightened risk of sexual victimization based on their history of sexual abuse, as adduced during the inmate intake process. (SAC ¶¶ 85-86; Pls. Mem. at 18-19.) This allegation, however, is conclusory. Plaintiffs do not plead any facts specific to their own medical history, just that "the

---

[7]     The articles were published on September 24, 2015, June 26, 2018, June 8, 2017, and August 2, 2016. (SAC ¶ 84 n.4; Pls. Mem. at 19.) With respect to the September 24, 2015 article, Plaintiffs also fail to identify that article in their Second Amended Complaint.

majority of women in jail have histories of trauma," (SAC ¶ 85 n.6); and, they conclusorily

assert that they "were at a heightened risk for sexual victimization while in DOC custody," (id.

¶ 85).  Even if Plaintiffs had made specific factual allegations about their intake histories, they

offer no further allegations to support an inference that any policymaker City would have known

about their intake histories.

       Finally, Plaintiffs cite to two governmental reports.[8]  Custom can be adequately

pleaded "based on governmental reports documenting constitutional deficiencies or misconduct"

so long as these are "sufficiently connected to the specific facts of the case."  Buari, 530 F. Supp.

3d at 398 (citations omitted); Gomez v. City of New York, No. 16-CV-1274-NGG-LB, 2017 WL

1034690, at *11 (E.D.N.Y. Mar. 16, 2017) ("Research reports may be used to bolster Monell

claims, but only if those reports are sufficiently connected to the specific facts of the case."); see

Clark v. City of New York, No. 22-CV-5647, 2023 WL 4029514, at *3 n.3 (S.D.N.Y. June 15,

2023) (framing the issue of sufficient connection as a question of causation); Tieman v. City of

Newburgh, No. 13-CV-4178-KMK, 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015)

(faulting the plaintiff for failing to allege a "causal link between the allegedly 'unstructured'

discipline guidelines [described in a research report] and the unconstitutional practice of not

---

[8]    Plaintiffs cite three other reports, but these were published too late to establish the City's notice and Plaintiffs do not allege any other facts evincing notice on behalf of the City. See Felix v. City of New York, 344 F. Supp. 3d 644, 658 (S.D.N.Y. 2018) ("That a report was published after the subject incident does not prevent plaintiffs from relying on it— provided plaintiffs plead other allegations from which the court may infer high-level policymakers' acquiescence." (citing cases)).  The June 2015 Moss Report and June 10, 2015 New York City Department of Investigation ("DOI") report were published after all the Plaintiffs had left custody, (SAC ¶¶ 110, 119), and the November 6, 2014 New York City DOI report was published when half the named Plaintiffs had already left custody, (id. ¶ 112).  Even if the last report were temporally relevant, it documented the "DOC's failure to prevent smuggling of contraband into its facilities," (id.), and Plaintiffs fail to establish that smuggling was the "moving force [behind] the constitutional violation," Canton, 489 U.S. at 389 (citations omitted).

investigating allegations of use of excessive force").  Plaintiffs, however, fail to connect the two

reports, which only indicate general issues of underreporting and tolerance of sexual abuse, to

the specific facts of Plaintiffs' allegations and their injuries.

The first is the U.S. Department of Justice's May 2013 survey "Sexual

Victimization in Prisons and Jails Reported by Inmates, 2011-12" ("May 2013 DOJ Survey"),

which reported that RMSC had the "highest rate nationally (5.6%) of jail inmates reporting being

coerced by facility staff in the previous 12 months (without any use or threat of force), including

being pressured or made to feel that they had to have sex or sexual contact with facility staff."

(SAC ¶ 89.)  The survey also found that "8.6% of RMSC inmates reported being sexually

victimized in the previous 12 months (compared to 3.2% nationally), with 5.9% [of RMSC

inmates] reporting staff sexual misconduct (compared to 1.8% nationally)."  (Id. ¶ 90.)

"Furthermore, 2.3% of RMSC inmates reported being physically forced by staff, 5.6% reported

being pressured by staff, and 2.9% reported being sexually victimized by staff without force or

pressure."  (Id.)  Plaintiffs, however, fail to establish that the abuse they suffered resembled the

conduct described in the May 2013 DOJ Survey.  For example, there is no description of whether

the staff described in the May 2013 DOJ Survey included medical personnel.  Thus, the May

2013 DOJ Survey is not demonstrably connected to the facts of Plaintiffs' cases.

The second is the August 4, 2014 report by the U.S. Attorney's Office for the

Southern District of New York regarding the "DOC [Department of Correction] and DOHMH's

[Department of Health and Mental Hygiene] culture of failing to report other abuses by staff"

("August 4, 2014 USAO Report").  (Id. ¶ 93.)  This report explained that Rikers had a so-called

culture of "hold[ing] it down," which was code for "don't report what happened."  (Id.)

According to the report, "officers and supervisors pressure inmates not to report" abuse, and

supervisory DOC and DOHMH officials were aware of this culture.  (Id.)  This report specifically gathered data relating to male adolescent inmates and use-of-force by correctional officers, but it did note "concern that DOC may be under-reporting sexual assault allegations." (Id. ¶ 92.)  Plaintiffs, however, fail to allege facts showing that the report is sufficiently connected to the specific circumstances of their experiences or how a culture of under-reporting was causally connected to their injuries.  See Buari, 530 F. Supp. 3d at 398.  Plaintiffs do not allege, for example, that other RMSC employees were pressured not to report Wilson's abuse, let alone any facts showing that other employees knew of Wilson's abuse.[9]  Furthermore, only one Plaintiff (K.A.) is alleged to have reported Wilson's abuse, and there are no allegations about how the culture of "hold[ing] it down" was the "moving force [behind] the constitutional violation."  Canton, 489 U.S. at 389 (citations omitted).

Based on the foregoing, Plaintiffs have not alleged sufficient facts to support their custom theory.  Accordingly, Plaintiffs' motion to dismiss is granted on this theory.[10]

Failure to Train

Next, the Court considers Plaintiffs' failure to train claim, which posits liability based on a "failure by policymakers to provide adequate training or supervision to subordinates

---

[9]    Plaintiffs allege that "Brian" would walk through the clinic and tell Wilson that he was taking too much time with K.A. and to "hurry up," but that is insufficient to show knowledge on the part of Brian.  (SAC ¶¶ 43, 60.)  Plaintiffs' other allegations of knowledge are conclusory.  (E.g., id. ¶ 128.)

[10]   Plaintiffs also cite to a declaration filed by former Public Advocate Letitia James in Jane Doe 1 v. City of New York.  No. 15-CV-03849-AKH, docket entry no. 32 (S.D.N.Y. Oct. 9, 2015).  This declaration, however, was not mentioned in the SAC.  While the Court may take judicial notice of documents filed in other litigation, the Court may not do so "for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).  Therefore, the declaration cannot be used to support Plaintiffs' claim.

to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon, 705 F. Supp. 2d at 277 (citations omitted). To establish "deliberate indifference," a plaintiff must show that: (1) the municipality "knows 'to a moral certainty' that [its] employees will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992) (citations omitted). A plaintiff must also identify "a specific deficiency in the city's training program and establish that [the] deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am., 361 F.3d at 129 (quoting Canton, 489 U.S. at 391).

### Failure to Train on Prohibition of Sexual Abuse

Plaintiffs appear to claim that the City failed to train its personnel that sexual abuse was prohibited. (SAC ¶ 7.) This claim fails because Plaintiffs do not allege any specific deficiencies other than that the City failed to put up signs stating that "it is a felony for clinic staff to have sexual intercourse or contact with an inmate." (Id.) This failure to post signage does not constitute a specific training deficiency. Plaintiffs also fail to plead any causal link between any alleged training deficiencies and Defendant Wilson's unconstitutional actions. This claim thus fails.

### Failure to Train on Reporting and Identifying Sexual Abuse

Plaintiffs also claim that the City failed to train staff on: taking reports of rape and sexual assault seriously and giving weight to witnesses, (SAC ¶ 142), documenting or

investigating allegations, (id. ¶ 145), and recognizing signs of abuse, (id. ¶ 124). As evidentiary support, Plaintiffs cite the Moss Report, which the City commissioned in 2015 to evaluate compliance with Prison Rape Elimination Act ("PREA") standards and which was published in June 2015. (Id. ¶ 119.) PREA standards are general guidelines for policies and training to prevent inmate sexual abuse by other inmates or staff, and they became effective in August 2012. (Id. ¶ 116.) The 2015 Moss Report "detailed the City and Corizon's deficiencies and failures to comply with PREA standards," including failing to provide training on how to identify and report abuse and failing to provide avenues for employees to report abuse. (Id. ¶ 119.) Despite Plaintiffs' allegations, courts in this District have held that a mere general assertion of failure to train on PREA standards is insufficient to plead plausibly a failure to train claim. Doe 1 v. Cty. of Rockland, No. 21-CV-6751-KMK, 2025 WL 945873, at *18 (S.D.N.Y. Mar. 28, 2025) (holding that plaintiff's "assertions that 'Individual Defendants' conduct and choices could of and would have been different had it been for appropriate training on . . . [PREA],' are insufficient to plausibly allege that any specific training deficiencies caused her injury"); see also Williams v. Fryermuth, No. 23-CV-2156-PMH, 2024 WL 4557444, at *6 (S.D.N.Y. Oct. 23, 2024) (holding that a plaintiff must identify, for example, issues with "procedural manuals or training guides" or "highlight relevant particular aspects" of training).

Besides the general reference to PREA standards, the only additional facts Plaintiffs allege are the three instances in which K.A. reported the abuse she experienced. (SAC ¶ 59.) K.A.'s three reports fail to establish an overarching policy deficiency, as Plaintiffs do not specify any issues with "procedural manuals or training guides" or "highlight relevant [] aspects" of training. Williams, 2024 WL 4557444, at *6.

Thus, the Court finds that Plaintiffs have insufficiently pleaded their claim for failure to train on reporting and identifying sexual abuse.

Failure to Supervise

Plaintiffs also argue that the City is liable under Monell for failure to supervise its staff.  (SAC ¶ 105.)  In order to successfully plead a failure to supervise claim under Section 1983, "a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." Lopes v. Westchester Cty., No. 18-CV-8205-KMK, 2020 WL 1445729, at *5 (S.D.N.Y. Mar. 25, 2020) (citation omitted); see Buari, 530 F. Supp. 3d at 400 (citation omitted) (holding that a failure to supervise claim requires "no meaningful attempt on the part of the municipality to investigate or to forestall further incidents").  A plaintiff may also demonstrate a failure to supervise by demonstrating "(1) that there was a pattern of actual similar constitutional violations and (2) the municipality consistently failed to discipline those involved." Tieman, 2015 WL 1379652, at *21.  For both theories, a plaintiff must establish that policymakers were "knowingly and deliberately indifferent to the possibility" that their subordinates "were wont to violate the constitutional rights" of those they encountered.  Amnesty Am., 361 F.3d at 127 (internal quotation marks and citation omitted).

Plaintiffs allege that the City failed to perform staff evaluations or reviews, failed to supervise compliance with the chaperone policy, failed to prevent contraband smuggling, and failed to employ obvious measures to reduce sexual misconduct risk.  (SAC ¶¶ 133, 140.)  These claims fail because Plaintiffs do not show that "the need for more or better supervision to protect

against constitutional violations was obvious" or that the City "fail[ed] to investigate." <u>Amnesty Am.</u>, 361 F.3d at 127-28.

First, Plaintiffs allege that the City failed to perform staff evaluations. In support, Plaintiffs cite the June 10, 2015 New York City DOI Report, but that report post-dates Plaintiffs' time at RMSC by at least four months. (SAC ¶¶ 110-11.) Plaintiffs have proffered no other facts concerning the City's knowledge of the alleged failure to perform staff evaluations nor have Plaintiffs alleged any connection between that failure and their injuries. Thus, this claim fails.

Second, Plaintiffs have not alleged any facts suggesting that the City was aware that the chaperone policy was insufficient or was being violated. K.A. shared the incidents of Defendant Wilson's abuse three times, including with a social worker and correctional officer, but K.A. did not share Wilson's name. (<u>Id.</u> ¶ 59.) Plaintiffs also allege that "Brian" would walk through the clinic and tell Wilson that he was taking too much time with K.A. and to "hurry up," but that is insufficient to show knowledge on the part of Brian, let alone the City. (<u>Id.</u> ¶¶ 43, 60.) There are no allegations to support an inference that the City or supervisory officials were on notice of Defendant Wilson's behavior or Wilson's violations of the City's chaperone policy.

Third, as to the contraband smuggling, Plaintiffs claim that the City's failure to limit smuggling enabled Defendant Wilson's sexual abuse of Plaintiffs. (<u>Id.</u> ¶ 113.) Plaintiffs cite only two reports published within the last few months of, or after, Defendant Wilson's abuse, so it is questionable whether their allegations are sufficient to demonstrate that the City was on notice of the inadequacies of its contraband policies. (<u>Id.</u> ¶¶ 110-12 (citing the November 6, 2014 New York City DOI Report as critiquing "DOC's failure to prevent smuggling of contraband into its facilities" and the June 10, 2015 New York City DOI Report as "detail[ing] numerous instances of Corizon employees smuggling contraband into Rikers Island

facilities")[11].)  Moreover, Plaintiffs fail to explain how these reports would have put the City on notice that contraband was being used by medical staff to facilitate sexual abuse.  Even if notice were established, Plaintiffs fail to explain how the failure to supervise contraband smuggling was a "moving force" behind constitutional violations, as smuggling is not a constitutional violation in and of itself.  See Canton, 489 U.S at 389 (citations omitted).

   Finally, Plaintiffs claim that the City was deliberately indifferent to the risks of abuse because it failed to employ obvious measures to reduce sexual misconduct risk, such as heightened monitoring of behavior indicating ongoing abuse, the installation and maintenance of surveillance cameras, exit interviews of incarcerated inmates, random staff interviews, and more frequent, unannounced rounds by supervisory officials.  (SAC ¶ 140.)  Plaintiffs, however, do not allege facts sufficient to show that the City knew that its existing policies were failing or that the need for such additional measures was "obvious."  While the May 2013 DOJ Survey and August 4, 2014 USAO Report support an inference that RMSC had a greater-than-average rate of sexual assault and a culture of under-reporting, Plaintiffs do not show that the City failed to act in response to these reports.  See Taranto v. Putnam Cty., No. 21-CV-2455-KMK, 2023 WL 6318280, at *20 (S.D.N.Y. Sept. 28, 2023) (Plaintiffs' failure to allege "any prior lack of investigation into or disciplining of [the defendant], or any other officer for that matter . . . dooms their claim." (citations omitted)); Walker v. City of New York, No. 14-CV-808 ER, 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (An obvious need for more supervision is insufficient to establish deliberate indifference if the plaintiff "does not specifically claim that the City failed to investigate the list of lawsuits.").

---

[11] Plaintiff K.A. was confined at RMSC until February 2015, Plaintiff L.R. was confined until November 2014, Plaintiff S.A. was confined until November 2014, and Plaintiff L.J. was confined until December 2014.  (SAC ¶¶ 52, 61, 68, 75.)

Plaintiffs have alleged no facts to show that the City was aware of a need for greater supervision in jail clinics, that it failed to investigate any claims to that effect, or that it failed to discipline anyone identified in such claims. Thus, Plaintiffs' failure to supervise claim must be dismissed.

Hiring Process Deficiencies

Lastly, Plaintiffs claim that the City's hiring process was deficient, including that it failed to perform background checks and other screening practices. To establish a Monell claim based on such allegations, a plaintiff must show that the City's hiring of an individual demonstrated deliberate indifference to the risk that a particular constitutional or statutory violation would follow the hiring decision. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 411 (1997). "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Id. Liability turns on the finding that the hired employee at issue "was highly likely to inflict the particular injury suffered by the plaintiff." Id. at 412 (emphasis in original).

Plaintiffs have pleaded no facts that would support a plausible inference that background checks would have given the City reason to believe that Wilson was especially predisposed to engage in sexual misconduct. Plaintiffs merely assert that, "[h]ad the City and Corizon not been deliberately indifferent to" performing background checks, "Wilson and his enablers would have been screened out prior to being offered employment and/or caught before the abuses became so rampant." (SAC ¶ 111.) Plaintiffs allege no additional facts relating to failure to screen. Instead, they assert that "[d]iscovery is expected to reveal facts that will further

elucidate the defendants' failures in this regard." (Id.)  Because Plaintiffs have plead only

conclusory statements that they hope to substantiate in the future, they have not stated a viable

Monell claim based on failure to conduct pre-employment screening.

Remaining State Law Claims

Plaintiffs have also pleaded six state and local law claims against the City in their

Second Amended Complaint: (1) sexual assault, rape, forcible touching, and battery;

(2) negligence; (3) negligent hiring, training, supervision, and retention; (4) intentional and

negligent infliction of emotional distress; (5) failure to intervene; and (6) violation of New York

City Administrative Code section 10-1105, "Victims of Gender-Motivated Violence Protection

Law."

Because all of Plaintiffs' federal claims against the City are dismissed, the Court

declines, pursuant to 28 U.S.C. section 1367, to exercise supplemental jurisdiction over

Plaintiffs' state and local law claims against the City.[12]  See Klein & Co. Futures, Inc. v. Bd. of

Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citations omitted) ("It is well

settled that where, as here, the federal claims are eliminated in the early stages of litigation,

courts should generally decline to exercise pendent jurisdiction over remaining state law

claims.").

---

[12]    The Court also declines to exercise supplemental jurisdiction over Plaintiffs' state and
local law claims against the City insofar as those claims are related to Plaintiffs' Section
1983 claims against Wilson because Plaintiffs have made no showing that the former
claims are "so related to [the latter] claims . . . that they form part of the same case or
controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); see
Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (The
plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the
evidence.").

Plaintiffs' Motion for Leave to File a Third Amended Complaint

Plaintiffs also move for leave to file a Third Amended Complaint (the "Proposed Third Amended Complaint" or "PTAC"). (Docket entry no. 188.) The City opposes the motion. The Proposed Third Amended Complaint makes no new factual allegations. (See docket entry no. 185 at 1 (Plaintiffs' cover letter to the PTAC).) "Rather, the amendments are primarily focused on adding the City to the Second, Third, Fourth, Fifth, and Sixth Claims asserted under state [and local] law[.]"[13] (Id.) According to Plaintiffs, "[t]hese claims against the City could not have been asserted prior to the recent passage of the Adult Survivors Act, N.Y. C.P.L.R. 214-j, as they were time-barred." (Id.)

Because the Court is declining to exercise supplemental jurisdiction of Plaintiffs' state and local law claims in the absence of viable federal law claims, Plaintiffs' motion for leave to amend is denied.

CONCLUSION

For the foregoing reasons, the City's motion to dismiss the Second Amended Complaint is granted and the Second Amended Complaint is dismissed in its entirety as against the City.[14] The federal claims are dismissed for failure to state claims upon which relief may be granted, and the Court declines to exercise supplemental jurisdiction of Plaintiffs' state and local

---

[13]     Plaintiffs style their state law claims as "Claim[s] for Relief under New York State Law," starting from a "First Claim" and ending with a "Sixth Claim." The federal section 1983 claims are styled as "First Claim for Relief" and "Second Claim for Relief." All said, there are eight separate claims: two under federal law and six under state law.

[14]     All of Plaintiffs' claims against Defendant Wilson remain live.

law claims.  Furthermore, Plaintiffs' motion for leave to file a Third Amended Complaint is denied.

Plaintiffs are, however, granted permission to file a motion for leave to file another proposed amended complaint, **within 21 days of the date of this Memorandum Opinion and Order**.  Any such motion must comply with all applicable federal, local, and individual rules of procedure (including Local Civil Rule 15.1).  Failure to make a timely motion for leave to amend, or to demonstrate in such a motion that amendment would not be futile, will result in dismissal of this action with prejudice.

The parties are also directed to file a status report describing the status of Plaintiffs' claims against Defendant Wilson, **within 21 days of the date of this Memorandum Opinion and Order**.

This Memorandum Opinion and Order resolves Docket Entry Nos. 144 and 188.


SO ORDERED.

Dated: August 7, 2015
      New York, New York


        /s/ Laura Taylor Swain
        LAURA TAYLOR SWAIN
        Chief United States District Judge